IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Criminal Case No. 12-cr-00414-LTB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. LUCILIOUS WARD,

      Defendant.

_____

ORDER
_____

After examining the briefs **[Docs. ## 108, 109, 113]**, I determine that oral argument would not materially assist me. After considering the Parties' arguments, and for the reasons below, I hold that Defendant Lucilious J. Ward's $659,664.64 in payroll taxes that resulted from his declared W-2 income shall be included in the calculation for both loss and restitution.

## I. Background

On January 3, 2014, Defendant Ward pled guilty to one count of Willful Failure to Truthfully Account for and to Pay Over Payroll Taxes in violation of 26 U.S.C. § 7202 and one count of False Claims Against the United States in violation of 18 U.S.C. § 287. [Doc. # 96]. At issue is the amount of losses and restitution to be paid.

## II. Discussion

Defendant Ward essentially argues that the $659,664.64 at issue should not be included in the loss and restitution calculation because, under the applicable regulations, "any amounts paid by Global Access to Defendant Ward, including the amounts reported as W-2 wages on his W-2 Forms for the period 2005-2013, are ignored for federal tax purposes; and these amounts

therefore cannot constitute 'wages' subject to payroll tax withholding." [Doc. # 108, p. 2]. I disagree.

"It is well settled that taxpayers are generally held to the consequences of their own characterizations of transactions." *McCoy Enters., Inc. v. Comm'r of Internal Revenue*, 58 F.3d 557, 561 (10th Cir. 1995); *Television Indust. Inc., v. Comm'r of Internal Revenue*, 284 F.2d 322, 325 (2d Cir. 1960) ("The [Tax] Commissioner is justified in determining the tax effect of transactions on the basis in which taxpayers have molded them"); *see also Fed. Nat'l Mort. Assoc. v. Comm'r of Internal Revenue*, 896 F.2d 580, 587 (D.C. Cir. 1990) (taxpayer may not recast the form of the transaction to achieve a more favorable tax consequence).

In *McCoy Enterprises*, the Tenth Circuit held a taxpayer to its original characterization of a transaction even where it appeared to be a fiction used for the sole purpose of obtaining certain tax benefits. *McCoy Enters.*, 58 F.3d at 559-62. The taxpayer originally characterized payments to its parent company as "loans." *Id.* at 559. The IRS used the taxpayer's characterization and determined that the taxpayer, as a result of the loans, failed to qualify for special tax treatment that had been allowed to "domestic international sales corporations." *Id.* Finding these special tax treatment rules did not apply, the IRS assessed a tax deficiency and a penalty against the taxpayer. *Id.* In affirming the decision of the Tax Commissioner, the Tenth Circuit noted that (1) the taxpayer intentionally chose to characterize the payments as loans in order to take advantage of certain tax benefits and (2) the taxpayer represented the payments as loans on its company books and in its reporting to the IRS. *Id.* at 561. The Tenth Circuit explained that it, "h[e]ld McCoy to its own chosen characterization of the amounts in question." *Id.*

Here, Defendant Ward was placed on Global Access' payroll as a W-2 employee in 2004 and remained there through 2012. [*See* Doc. # 86 (because Defendant Ward pled guilty, I use

the facts to which he pled guilty, found in the second superceding indictment)].  Defendant Ward contends that his W-2 wages for the period 2005-2012 should be are ignored for federal tax purposes and thus should not factor into the loss and restitution calculation.  However, like in *McCoy Enterprises*, Defendant Ward will be held to the consequences of his own characterizations of his income as a W-2 employee.  Like the taxpayer in *McCoy*, Defendant Ward is "responsible for the $659,664.84 in payroll taxes that resulted from his reported W-2 wages from 2005 through 2012 . . . because [he] intentionally characterized himself as a W-2 employee in order to gain the tax advantage of avoiding penalties associated with self-employment taxes."  [Doc. # 109, p. 7].

The Tenth Circuit in *McCoy Enters*. recognized a significant problem, applicable here, in allowing a taxpayer to recast the characterization of a transaction.  The court explained:

> [t]o hold otherwise would allow McCoy now to change its initial approach and would permit income to be shifted to periods in which the statutes of limitations forecloses the IRS from recovering any back taxes. As a matter of common sense and sound policy, we cannot allow McCoy to employ such a 'bait and switch' strategy to take advantage of the statute of limitations.

*McCoy Enters*., 58 F.3d at 562.  Allowing Defendant Ward to claim that the income reported on his W-2 Forms is "ignored" would be the same kind of "bait and switch."  Defendant Ward's characterization spanned nine tax years, thus the applicable civil and criminal statute of limitations for many of the years in question has run.  Such a result is impermissible.  As the Tenth Circuit made clear, this is precisely the type of after-the-fact repudiation that is not allowed.  *Id*.; *see also Brennan v. Comm'r of Internal Revenue*, T.C. Memo. 2012-187, 2012 WL 2740897 at *4 (U.S. Tax. Ct. 2012) ("The rule exists because to permit taxpayers to challenge at will their own adopted form in favor of what they assert is actually the true substance would encourage post-transactional planning, promote unwarranted litigation by taxpayers, and raise a

heavy administrative burden on the Government, including substantial problems of proof."); *Jack Kent Cooke Inc. v. U.S.*, 116 F.3d 1473, 1997 WL 351222 at *3 (4th Cir. 1997) ("Although the government may disregard the form of a sham or unreal transaction, taxpayers may not set up straw men and then blow them down when no longer convenient.") (unpublished); *Maletis v. U.S.*, 200 F.2d 97, 97-98 (9th Cir. 1952) ( "That what he created cannot be a valid family partnership for tax purposes is irrelevant, since he elected to do business as a partnership and represented it to be valid.")

Furthermore, the government contends that it does not currently have the "ability to disentangle the nine-year fiction that defendant Ward created and reconstruct what his taxes should have been had he chosen to properly report them in the first place," nor should they be obligated to perform such a task. [Doc. # 109, p. 8].  This is precisely the heavy administrative burden that the law states a taxpayer cannot impose on the government by repudiating a characterization that he chose.  *See Fed. Nat'l Mort. Assoc.*, 896 F.2d at 587 ("It would be quite intolerable to pyramid the existing complexities of tax law by a rule that the tax shall be that resulting from the form of transaction taxpayers have chosen or from any other form they might have chosen, whichever is less."); *Maletis*, 200 F.2d at 97-98 ("The burden is on the taxpayer to see to it that the form of business he has created for tax purposes, and has asserted on his returns to be valid, is in fact not a sham or unreal. If in fact it is unreal, then it is not he but the Commissioner who should have the sole power to sustain or disregard the effect of the fiction since otherwise the opportunities for manipulation of taxes are practically unchecked.")

### III. Conclusion

Because Defendant Ward chose to characterize his salary from Global Access as W-2 income for the tax years 2005 through 2012, I also hold him to this characterization. Accordingly, the $659,664.64 in payroll taxes that stems from Defendant Ward's W-2 income from 2005 through 2012 shall be included in both the loss and restitution calculations in this case.

Date: April   8  , 2014 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE